IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

OMNIGON COMMUNICATIONS, LLC,       )
                                   )
            Plaintiff,             )
                                   )        **Civil Action No. 14-CV-10063**
     v.                            )
                                   )        **JURY TRIAL DEMANDED**
IMMERSION MEDIA, INC.,             )
                                   )
            Defendant.             )

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

NOW COMES Defendant Immersion Media, Inc. ("Immersion"), by and through undersigned counsel, and hereby responds to Plaintiff Omnigon Communications, LLC's ("Omnigon") Complaint as follows:

### ANSWER

1.      Immersion admits upon information and belief that Omnigon is located at 1261 Broadway Suite 200, New York, NY 10001.  Except as admitted, Immersion denies the allegations of Paragraph 1.

2.      Immersion admits the allegations of Paragraph 2.

3.      Immersion admits the allegations of Paragraph 3 upon information and belief.

4.      Immersion is without knowledge or information sufficient to form a belief as to the truth of the allegations found in Paragraph 4, and Immersion therefore denies the same.

5.      Immersion admits that it was hired by Omnigon to specially create code and software to be used by Omnigon and Verizon in a mobile racing application.  Except as admitted, Immersion denies the allegations of Paragraph 5.

6.      Immersion denies the allegations of Paragraph 6.

7.     Immersion admits the allegations of Paragraph 7.

8.     Immersion admits that it, Omnigon, Quick Play and Verizon began discussions regarding the creation of code for a 3D racing application in September 2013.  In October 2013, Immersion began creating this code after receiving a general statement of work from Verizon. From October 2013 through January 2014, Immersion continued its work on this project, while Immersion, Verizon, and Omnigon discussed a more detailed statement of work.   Except as admitted, Immersion denies the allegations of Paragraph 8.

9.     Immersion admits that, in or about June 2014, Immersion and Omnigon begin negotiating a document referred to as a "Master Services Agreement" or "MSA."  Except as admitted, Immersion denies the allegations of Paragraph 9.

10.     Immersion admits that on August 7, 2014, it signed the MSA.  Except as admitted, Immersion denies the allegations of Paragraph 10.

11.     Immersion admits that in March 2014, Verizon provided Omnigon with $50,000 to pay Immersion for work Immersion had already performed.  Except as admitted, Immersion denies the allegations of Paragraph 11.

12.     Immersion admits the allegations of Paragraph 12.

13.     The MSA is the best evidence of its contents and speaks for itself.  To the extent the allegations of Paragraph 13 are inconsistent with the expressed terms of the MSA, Immersion denies those allegations.  Immersion expressly denies that any deliverables were subject to the MSA. Except as admitted, Immersion denies the allegations of Paragraph 13.   Additionally, Immersion denies that any "Exhibit A" was attached to the service copy of the Complaint.

14.     Immersion denies the allegations of Paragraph 14.

15.     The MSA is the best evidence of its contents and speaks for itself.  To the extent the allegations of Paragraph 15 are inconsistent with the expressed terms of the MSA, Immersion denies those allegations.  Immersion expressly denies that any deliverables were subject to the MSA. Except as admitted, Immersion denies the allegations of Paragraph 15.

16.     Immersion denies the allegations of Paragraph 16.

17.     Immersion denies the allegations of Paragraph 17.

18.     Immersion denies the allegations of Paragraph 18.

19.     Immersion admits that in late July 2014, Omnigon instructed Immersion to immediately upload all of its code and materials to the Omnigon review site, and then to stop work on the project.  Except as admitted, Immersion denies the allegations of Paragraph 19.

20.     Immersion denies the allegations of Paragraph 20.

21.     Immersion denies it failed to provide deliverables.   As to the remaining allegations of Paragraph 21, Immersion is without knowledge or information sufficient to form a belief as to the truth of those and therefore denies the same.  Immersion is without knowledge or information sufficient to form a belief as to the truth of the allegations found in Paragraph 22, and Immersion therefore denies the same.

22.     Immersion denies the allegations of Paragraph 23.

23.     The MSA is the best evidence of its contents and speaks for itself.  To the extent the allegations of Paragraph 24 are inconsistent with the expressed terms of the MSA, Immersion denies those allegations.  Immersion expressly denies that any deliverables were subject to the MSA. Except as admitted, Immersion denies the allegations of Paragraph 24.   Additionally, Immersion denies that any "Exhibit A" was attached to the service copy of the Complaint.

24.     Immersion denies the allegations of Paragraph 25.

25.     Immersion denies the allegations of Paragraph 26.

26.     Immersion admits it has not paid Omnigon or "returned" the $50,000 payment Immersion received for the work it performed prior to that payment.  Except as admitted, Immersion denies the allegations of Paragraph 27.

27.     Immersion denies the allegations of Paragraph 28.

28.     Immersion denies the allegations of Paragraph 29.

29.     Immersion incorporates its answers in the preceding Paragraphs as if fully set forth herein.

30.     Immersion admits the allegations of Paragraph 31.

31.     Immersion denies the allegations of Paragraph 32.

32.     Immersion admits it has not paid Omnigon or "returned" the $50,000 payment Immersion received for the work it performed prior to that payment.  Except as admitted, Immersion denies the allegations of Paragraph 33.

33.     Immersion denies the allegations of Paragraph 34.

34.     Immersion incorporates its answers in the preceding Paragraphs as if fully set forth herein.

35.     Immersion admits that in March 2014, Verizon provided Omnigon with $50,000 to pay Immersion for work Immersion had already performed.  Except as admitted, Immersion denies the allegations of Paragraph 36.

36.     Immersion denies the allegations of Paragraph 37.

37.     Immersion denies the allegations of Paragraph 38.

38.     Immersion admits it has not paid Omnigon or "returned" the $50,000 payment Immersion received for the work it performed prior to that payment.  Except as admitted, Immersion denies the allegations of Paragraph 39.

39.     Immersion denies the allegations of Paragraph 40.

40.     Immersion incorporates its answers in the preceding Paragraphs as if fully set forth herein.

41.     Immersion admits that in March 2014, Verizon provided Omnigon with $50,000 to pay Immersion for work Immersion had already performed.  Except as admitted, Immersion denies the allegations of Paragraph 42.

42.     Immersion admits it has not paid Omnigon or "returned" the $50,000 payment Immersion received for the work it performed prior to that payment.  Except as admitted, Immersion denies the allegations of Paragraph 43.

43.     Immersion admits it has not paid Omnigon or "returned" the $50,000 payment Immersion received for the work it performed prior to that payment.  Except as admitted, Immersion denies the allegations of Paragraph 44.

44.     Immersion incorporates its answers in the preceding Paragraphs as if fully set forth herein.

45.     The MSA is the best evidence of its contents and speaks for itself.  To the extent the allegations of Paragraph 46 are inconsistent with the expressed terms of the MSA, Immersion denies those allegations.  Immersion expressly denies that "the Project" as defined by the Complaint was subject to the MSA. Except as admitted, Immersion denies the allegations of Paragraph 46.

46.     Immersion denies the allegations of Paragraph 47.

47.     Immersion denies the allegations of Paragraph 48.

48.     Immersion denies the allegations of Paragraph 49.


## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Failure to State a Claim

Omnigon fails to state any claim upon which relief can be granted, subjecting its Complaint to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Omnigon fails to plead its unjust enrichment claims (Count II) and conversion claims (Count IV) in the alternative, thus subjecting both to dismissal due to Omnigon's allegation of an enforceable contract.

### Second Affirmative Defense: Impossibility of Performance

To the extent Immersion failed to perform, which is denied, that failure was due to impossibility of performance.  Omnigon's supposed determination of Immersion's goods as "non-conforming" were against standards never shared with Immersion.  Furthermore, Omnigon demanded Immersion submit all materials and cease working on the project, thereby preventing Immersion from finishing its work or curing any alleged non-conformity.

### Third Affirmative Defense: Estoppel

Omnigon's claims are barred by the doctrine of estoppel.  The creation of Immersion's deliverables were based upon guidance provided by Omnigon and upon industry standards.   At the last hour, Omnigon provided a new set of standards, demanded Immersion immediately submit all materials related to the deliverables, and demanded Immersion cease working on the project.  Thereafter, Omnigon never notified Immersion  why certain portion of the deliverables were "non-conforming," nor provided Immersion with any chance to cure such "non-

conformity." Instead, Omnigon withheld payment, withheld communication, and then sued Immersion.

### Fourth Affirmative Defense: Unclean Hands/*In Pari Delicto*

Omnigon's claims are barred by the doctrine of unclean hands and/or *in pari delicto* as Omnigon has breached its agreement with Immersion, and as the creation of Immersion's deliverables were based upon guidance provided by Omnigon and upon industry standards, which Omnigon changed at the last hour. Omnigon also demanded Immersion immediately submit all materials related to the deliverables, and demanded Immersion cease working on the project. Thereafter, Omnigon never notified Immersion of what portion of the deliverables were "non-conforming," nor provided Immersion with any chance to cure such "non-conformity." Instead, Omnigon withheld payment, withheld communication, and then sued Immersion.

### Fifth Affirmative Defense: Fraudulent Inducement

To the extent Omnigon claims that the MSA is the controlling document in this lawsuit, Immersion pleads fraudulent inducement as a bar to Omnigon's claims under the MSA. Jeffrey Neu of the law firm Kuzas Neu, who represents Omnigon in this dispute, negotiated the MSA on Omnigon's behalf. These "negotiations" took place from June 23, 2014 through August 7, 2014, mostly by email between Mr. Neu and Rick Perko of Immersion. Mr. Neu told Immersion that signing the MSA would not cause any penalty to be applied to any milestone dates missed by Immersion prior to August 29. Immersion reasonably relied on the representations of Mr. Neu, which were material, and ultimately false. Upon information and belief, Omnigon knew these representations were false at the time they were made. After Immersion signed the MSA, Omnigon now uses it as a sword and putative shield to avoid payment of Immersion, causing damage to Immersion.

### Sixth Affirmative Defense: Unconscionability

To the extent Omnigon claims that the MSA is the controlling document in this lawsuit, the enforceability of the MSA and the claims brought pursuant to the MSA's terms are barred by the doctrine of unconscionability. Because Immersion had performed all the work required by its pre-MSA contract with Omnigon, Omnigon had and used unbridled bargaining power to force Immersion to sign the MSA. Immersion therefore lacked any meaningful choice. The MSA is also unconscionable on its face, and includes unreasonably favorable contractual provisions.

### Seventh Affirmative Defense: Material Breach of Contract

To the extent the Court finds that the MSA controls the relationship between Omnigon and Immersion, Omnigon has materially breached the MSA and therefore should further be barred from attempting to enforce its provisions.

### Eighth Affirmative Defense: Setoff

To the extent the Court finds Omnigon has been damaged, Immersion is entitled to a setoff for the work it performed for Omnigon for which Omnigon has refused to pay Immersion.

### Ninth Affirmative Defense: Conditions Precedent

To the extent the Court finds the MSA enforceable, Omnigon's claim for breach of contract (Count I) is barred by its failure to satisfy conditions precedent, specifically it failed to provide Immersion any opportunity to cure any alleged "non-conformity" in the deliverables.

### Tenth Affirmative Defense: Substantial Performance

To the extent the Court finds that Immersion failed to fully perform its contractual duties, it should find that Immersion substantially performed and thus entitled to substantial or full payment.

### Eleventh Affirmative Defense: Partial Performance

To the extent the Court finds that Immersion failed to fully or substantially perform its contractual duties, it should find that Immersion partially performed and thus entitled to partial payment.

### COUNTERCLAIM

Defendant Immersion Media, Inc. ("Immersion"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 13, brings this counterclaim against Plaintiff Omnigon Communications, LLC's ("Omnigon"), alleging as follows:

### INTRODUCTION

1.     Omnigon and Immersion are software companies who were working with Verizon to create a three dimensional racing mobile application for Verizon (the "Project"). Immersion was hired by Omnigon to perform work on the Project. This process began in October 2013, and continued through July 2014.    While the parties negotiated the scope of Immersion's work, Verizon and Omnigon asked Immersion to begin work in good faith. In March 2014, Omnigon paid Immersion $50,000 for the work it had completed to date, and as a reciprocal sign of good faith that Immersion should continue working although final contractual terms had not solidified. On or about May 7, 2014, Omnigon and Immersion agreed on a statement of work with all material terms sufficient to form an enforceable contract. Immersion continued working, and as it was about to complete all of the deliverables under the parties' contract, Omnigon suddenly placed new requirements on Immersion, then demanded Immersion produce all deliverables, then demanded Immersion produce all materials related to the deliverables, and then demanded Immersion stop all work on the project. Thereafter, Omnigon demanded Immersion sign a document titled "Master Services Agreement", referred to as the "MSA", as a condition

precedent for being paid for its work. Under this pressure, Immersion signed the MSA. Despite doing so, Omnigon refused to pay Immersion. Because of Omnigon's continued refusal to pay Immersion per the parties' agreement, Immersion now brings this counterclaim.

## THE PARTIES

2.     Immersion is a North Carolina corporation with its principal place of business at 1922 Fort Bragg Rd, Fayetteville, NC 28303.

3.     Omnigon is a New York limited liability company with its principal place of business at 1261 Broadway Suite 200, New York, NY 10001.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

5.     This Court has personal jurisdiction over Omnigon pursuant to CPLR § 301 because Omnigon is a New York limited liability company with its principal place of business in New York.

6.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because Omnigon maintains its principal place of business in the Southern District of New York.

7.     This action has been filed within all applicable statutes of limitation and repose, and all conditions precedent applicable to Immersion have been performed or have occurred.

## FACTS

8.     In or about September 2013, Verizon approached Immersion about creating code and 3D assets for the Project.

9.     In October 2013, representatives from Verizon, Immersion, and Omnigon met to discuss the Project.

10.     In October 2013, Verizon asked Immersion to begin work on the Project despite lack of a contract between the parties, and Immersion accepted.

11.     Immersion began work on the project after receiving a general statement of work from Verizon.   This outlined the code and software Immersion would specially create for the Project.

12.     Verizon indicated that while it would pay for the work, the deliverable would be delivered to Omnigon, who would then take the code and  then integrate the product into  the mobile application for Verizon.

13.     In December 2013, Verizon, Omnigon, and Immersion continued their discussions about the scope of Immersion's work.

14.     In December 2013, Verizon and Omnigon requested that Immersion continue working in good faith despite the lack of any payment for Immersion's services to date, and the lack of any contractual terms guaranteeing Immersion payment for its work.

15.     In March 2014, Omnigon paid Immersion $50,000 as the first "milestone" payment for its work on the Project.

16.     From December 2013 to April 2014, Immersion and Omnigon continued to negotiate the statement of work that would control the parties' rights and responsibilities.

17.     On or about April 25, 2014, Immersion proposed to Omnigon a revised statement of work that described what deliverables Immersion must produce to Omnigon, and the corresponding payment Immersion expected to receive from Omnigon. This statement of work included total payments to Immersion of $592,000.

18.     On or about April 28, 2014, Omnigon contacted Immersion and asked *"[c]an you please clarify the payment amounts that should be included in each milestone date? We are in*

*the process of reviewing our SOW with the VZW team and want to make sure your payment amounts/milestones are properly reflected.*"

19.    On or about May 2, 2014, Omnigon requested Immersion provide updated payment milestone information, and provided Immersion with a suggested template.

20.    On or about May 5, 2014, Immersion provided Omnigon with a new statement of work outlining the parties' rights and responsibilities.  The document is titled "SOW for Verizon INDYCAR Scoring Application."

21.    On or about May 5, 2014, Omnigon responded and demanded Immersion use the payment template referenced in Paragraph 19.  In its communication, Omnigon stated "*For the purpose of the SOW with VZW we need to identify approx [sic] 7 key milestones dates and associate a payment with each milestone.*"

22.    On or about May 5, 2014, Omnigon informed Verizon it intended to use the following milestone payment structure for Immersion:

- Milestone 1 (Initial Payment)
- Milestone 2 (April 11)
- Milestone 3 (May 23)
- Milestone 4 (June 20)
- Milestone 5 (July 11)
- Milestone 6 (August 1)
- Milestone 7 (August 29)

23.    On or about May 6, 2014, Omnigon contacted Immersion and informed Immersion that Verizon requested twenty percent (20%) of all payments be held to the final payment milestone, and proposed the following milestone payment schedule:

|  | **Immersion** |  |
|---|---|---|
| 1st milestone (initial milestone) | $50,000.00 |  |
| 2nd milestone (April 11) | $0.00 | 0% |
| 3rd milestone (May 23) | $162,750.00 | 30% |
| 4th milestone (June 20) | $162,750.00 | 30% |
| 5th milestone (July 11) | $108,500.00 | 20% |

| | | |
|---|---|---|
| 6th milestone (August 1) | $0.00 | 0% |
| 7th milestone (August 29) | $108,500.00 | 20% |
| | **$592,500.00** | **100%** |

24.     On or about May 7, 2014, Immersion informed Omnigon that it accepted this payment milestone payment schedule.

25.     On or about May 7, 2014, Omnigon and Immersion agreed to a statement of work that described what deliverables Immersion must produce to Omnigon, and the corresponding payment Immersion expected to receive from Omnigon.

26.     As of or about May 7, 2014, an enforceable written contract existed between Omnigon and Immersion.

27.     To the extent the deliverables identified in the May 7, 2014 contract are or were "goods" as defined by N.Y. U.C.C. § 2-201, those goods were specially manufactured by Immersion for Omnigon, and were not suitable for sale to others in the ordinary course of Immersion's business.

28.     Omnigon did not pay Immersion the $162,750.00 due on May 23 as required by the May 7, 2014 contract.

29.     Omnigon did not pay Immersion the $162,750.00 due on June 20 as required by the May 7, 2014 contract.

30.     Omnigon did not pay Immersion the $108,500.00 due on July 11 as required by the May 7, 2014 contract.

31.     After the parties agreed to the May 7, 2014 contract, Omnigon informed Immersion that Immersion was required to sign a separate contract.

32.     Omnigon, through its counsel, Jeff Neu of Kuzas Neu, P.C., then provided Immersion with a draft contract titled "Omnigon Communications Master Services Agreement", referred to as the "MSA."

33.     Omnigon, through Mr. Neu and through staff at Omnigon, impliedly informed Immersion that if it did not sign the MSA, Immersion would not be paid for its work.

34.     Based on Omnigon's assertions, Immersion became concerned that Omnigon would challenge the enforceability of the May 7, 2014 contract, and thus wanted the MSA to reflect the parties' agreement as encapsulated in the May 7, 2014 contract.

35.     Thereafter, Immersion proposed edits to the MSA to reflect the May 7, 2014 contract, which were subsequently rejected by Omnigon through Mr. Neu.

36.     In late July 2014, Immersion received instructions from Omnigon regarding the formatting of Immersion's code for the Project.  This is the first clear instruction from either Verizon or Omnigon.

37.     Before this instruction, Immersion had, with Omnigon's knowledge, been developing the code for the Project using industry best practices.

38.     On July 25, 2014, Omnigon informed Immersion for the first time that "*[i]n order to meet the overall IndyCar '15 project deadlines, all Immersion deliverables (2D and 3D iOS and Android) need to be feature complete, accessible to our team and pass the Omnigon code quality standards by Thursday, July 31st. If this date is not successfully met, Omnigon will take over the coding responsibility.*"

39.     On or about July 26, 2014, Immersion informed Omnigon by email that prior to the July 25, 2014 communication, that "*[n]o one mentioned a July 31 deadline to [Immersion]*", or that "*Omnigon would take over the coding effort if we did not make that*

*date.*" Immersion further informed Omnigon that it was "*confused as to how Omnigon expects us to have feature complete applications by this date, especially when the design has not been finalized or approved [by Verizon].*" Immersion further stated that "*[i]f you're suggesting that you expect our applications to be feature complete by this date -- absent the final UI, iOS smoothing logic (and the items which depend on this), and 3D audio, then I think this is doable.*"

40.     Omnigon responded to Immersion's July 26, 2014 email by stating "*correct, feature complete sans final design. Additionally feedback provided with regards to code quality must be accounted for. Otherwise the code will not be accepted by out [sic] team.*"

41.     During these discussions, Mr. Neu, on behalf of Omnigon, provided Immersion with a new draft of the MSA, which now included penalty language that, if enforceable, would penalize Immersion a two percent (2%) per day penalty for unmet milestones, with a maximum penalty of twenty percent (20%).

42.     On or about July 29, 2014, Immersion informed Omnigon, through Mr. Neu, that it understood this penalty structure would not apply to precedent milestone dates, or that Immersion could complete those milestones by August 29, 2014.

43.     On or about July 30, 2014, Mr. Neu, on behalf of Omnigon, informed Immersion that the penalty language was required by Verizon, but that Immersion could complete milestone deliverables by August 29 with no penalty.

44.     Immersion reasonably relied on Mr. Neu's representations about the MSA.

45.     On or about July 30, 2014, Immersion informed Omnigon that Mr. Neu's representations "*effectively eliminates [its] concerns over being held accountable to a date that had already passed,*" and that Immersion would sign the MSA.

46.     On or about July 31, 2014, Immersion uploaded its remaining Project deliverables and code-related materials to the Omnigon review site, and pursuant to Omnigon's instructions, ceased working on the Project.

47.     Despite Omnigon demanding production of the deliverables and related material on a shortened time frame, Immersion performed substantially all of its obligations under the parties' contract.

48.     Despite Omnigon demanding production of the deliverables and related material on a shortened time frame, Immersion believed that the deliverables provided met and/or passed all appropriate standards.

49.     Based upon the representations of Mr. Neu, on August 7, 2014, Immersion signed the MSA.

50.     The MSA states that its effective date is August 7, 2014.

51.     Among other requirements, under the MSA, Omnigon was to (a) deliver statement of works that contained specifications, schedules, milestones, payments, or any other terms and conditions mutually agreed upon by the parties that listed any and all materials, information, services, or other work to be performed for or on behalf of Omnigon; (b) reimburse Immersion for out of pocket expenses; (c) provide detailed, written notice of any non-conformity in any deliverable; (d) provide a related ten (10) day cure period; and (3) provide clearly stated reasons for any rejection of any deliverable.

52.     On August 12, just days after Immersion signed the MSA, Omnigon rejected the deliverables uploaded by Immersion.

53.     Before this notice of repudiation was ever received by Immersion, Immersion had made a substantial beginning of its manufacture of the deliverables under the May 7, 2014 contract.

54.     Immersion thereafter requested an explanation from Omnigon as to why certain deliverables were rejected.  In some cases, some of the deliverables rejected had already been accepted by Verizon.

55.     Omnigon never provided Immersion with a response, did not provide Immersion with an opportunity to cure the supposed non-conformities, refused to pay Immersion anything, and began attempting to haggle over what it should have to pay Immersion.

56.     On or about August 27, 2014, Omnigon, through its counsel Mr. Neu, sent Immersion the letter attached hereto as **Exhibit 1**, which is incorporated by reference.

57.     Omnigon did not pay Immersion the $108,500.00 due on August 29, 2014.

58.     In total, Omnigon failed to pay Immersion $542,500.00 it agreed to pay Immersion under the May 7, 2014 contract.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

59.     Immersion incorporates the allegations of the preceding Paragraphs as if fully set forth herein.

60.     Immersion and Omnigon entered into an enforceable contract, namely the statement of work agreed to on or about May 7, 2014.

61.     Immersion has performed all its obligations under the statement of work.

62.     Omnigon has breached the statement of work by failing to pay Immersion pursuant to the terms of the contract.

63.     As a proximate cause of Omnigon's breach, Immersion has been damaged in the amount of at least $542,500.00.

## SECOND CAUSE OF ACTION (IN THE ALTERNATIVE): IMPLIED-IN-FACT CONTRACT

64.     Immersion incorporates the allegations of the preceding Paragraphs as if fully set forth herein.

65.     Alternatively, Immersion and Omnigon created a contract implied in fact on or about May 7, 2014.

66.     Omnigon and Immersion assented to be bound to the terms of the statement of work agreed to by each, which included a list of deliverables to be produced by Immersion, and in exchange compensation to be paid by Omnigon.

67.     Immersion then produced those deliverables, for which Omnigon has refused to pay.

68.     Omnigon has therefore breached the contract implied in fact between the parties, damaging Immersion in the amount of $542,500.00.

## THIRD CAUSE OF ACTION (IN THE ALTERNATIVE): UNJUST ENRICHMENT

69.     Immersion incorporates the allegations of the preceding Paragraphs 1-59 as if fully set forth herein.

70.     Should the Court find that no enforceable contract between Immersion and Omnigon exists, Immersion alternatively brings a claim for unjust enrichment.

71.     Immersion conferred a benefit on Omnigon in the form of code, content and software related to the Project.

72.     Omnigon accepted that code and software related to the Project, and was enriched by the acceptance of this code and software at Immersion's expense.

73.   The benefit conferred from Immersion to Omnigon was not conferred gratuitously.

74.   Omnigon has been unjustly enriched in the amount of at least $542,000.00, causing Immersion to suffer damages in an amount of at least $542,500.00.

75.   Equity and good conscience militate against permitting Omnigon to retain this unjust enrichment.

## FOURTH CAUSE OF ACTION (IN THE ALTERNATIVE): BREACH OF CONTRACT

76.   Immersion incorporates the allegations of the preceding Paragraphs as if fully set forth herein.

77.   Should the Court find that the MSA is the controlling agreement between the parties, Immersion alleges that Omnigon has breached several provisions of the MSA, specifically, Omnigon failed to: (a) deliver statement of works that contained specifications, schedules, milestones, payments, or any other terms and conditions mutually agreed upon by the parties that listed any and all materials, information, services, or other work to be performed for or on behalf of Omnigon; (b) reimburse Immersion for out of pocket expenses; (c) provide detailed, written notice of any non-conformity in any deliverable; (d) provide a related ten (10) day cure period; and (3) provide clearly stated reasons for any rejection of any deliverable.

78.   Immersion has performed its obligations under the MSA.

79.   As a proximate cause of Omnigon's breaches, Immersion has been damaged in the amount of at least $542,500.00.

WHEREFORE, Defendant Immersion Media, Inc. prays the Court for the following relief:

A)  Dismiss Omnigon's claims found in the Complaint;

B)  Enter an Order that holds Omnigon have and recover nothing from Immersion;

C)  Award Immersion at least $542,000.00 in damages, plus prejudgment interest, and costs;

D)  Award Immersion its attorneys' fees;

E)  A jury trial on all issues so triable; and

F)  Grant Immersion such other relief the Court finds just and proper.

Dated: December 24, 2014
New York, NY

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: ____ /s/ Andrew D. Jacobs _____
Edward H. Rosenthal
Andrew D. Jacobs
488 Madison Avenue
New York, NY 10022
Tel: (212) 980-0120
Fax: (212) 593-9175
erosenthal@fkks.com
ajacobs@fkks.com

*Attorneys for Immersion Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** was electronically filed with the Clerk of the Court using the CM/ECF system and served upon Plaintiff via U.S. Mail, postage prepaid, to the following:

Luc Ulmet
Kuzas Neu, P.C.
318 Newman Springs Road
Red Bank, NJ 07701

*Attorney for Plaintiff*

This the 24rd day of December, 2014.